**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICHARD LEE POLLARD,
*Plaintiff-Appellant,*

v.

THE GEO GROUP, INC.,
Erroneously Sued As WACKENHUT
CORRECTIONS CORPORATION, dba
Taft Correctional Institution;
MARGARET MINNECI; JONATHAN E.
AKANNO; ROBERT SPACK; BOB D.
STEIFER; BECKY MANESS,
*Defendants-Appellees.*

No. 07-16112

D.C. No.
CV-01-06078-
OWW(WMW)

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
October 7, 2009—San Francisco, California

Filed June 7, 2010
Amended December 10, 2010

Before: Procter Hug, Jr. and Richard A. Paez,
Circuit Judges, and Jane A. Restani,* Judge.

Order;
Dissent to Order by Judge Bea;
Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge Restani

*The Honorable Jane A. Restani, Chief Judge of the United States
Court of International Trade, sitting by designation.

19669

## COUNSEL

John F. Preis, University of Richmond School of Law, Richmond, Virginia, and Charles Francis Carbone, San Francisco, California, for the plaintiff-appellant.

Michael Kenneth Johnson, Lewis, Brisbois, Bisgaard & Smith, LLP, San Francisco, California, for defendants-appellees Wackenhut/The GEO Group, Inc., Margaret Minneci, Robert Spack, Bob D. Steifer, and Becky Maness.

David J. Wilson, Manning & Marder Kass Ellrod Ramirez LLP, Los Angeles, California, for defendant-appellee Jonathan E. Akanno.

**ORDER**

The majority opinion is amended as follows:

1.  At slip op. 8168, n.15, 607 F.3d at 597 n.15, the final sentence of the footnote is amended to read: <Furthermore, as discussed above, Malesko also relied on the fact that the plaintiff was not seeking recovery against an individual officer. *See id*. at 73-74, 122 S.Ct. 515.>

2.  At slip op. 8177, 607 F.3d at 602, the following sentence <Unfortunately, under the current *Bivens* regime, asymmetries will remain irrespective of whether we recognize or deny a *Bivens* cause of action here.> is amended to read: <Unfortunately, under the current *Bivens* regime, asymmetries may remain irrespective of whether we recognize or deny a *Bivens* cause of action here.>

3.  At slip op. 8177, 607 F.3d at 602, the paragraph beginning <Unlike officers employed . . .> is amended to read: <Unlike officers employed by public prisons, the GEO employees may not be entitled to qualified immunity, and as a result, prisoners asserting claims against them may be able to recover more often than their counterparts in governmentally run prisons. *Compare Richardson*, 521 U.S. at 401 (holding that employees of privately operated state prisons are not entitled to qualified immunity), *with Butz v. Economou*, 438 U.S. 478, 501 (1978) (holding that "federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers" (emphases removed)), *and Holly*, 434 F.3d at 294 (stating that employees of privately operated federal prisons are not entitled to qualified immunity). We need not decide the issue of qualified immunity here.>

The dissenting opinion is amended as follows:

At slip op. 8191, 607 F.3d at 611, in the last textual sentence before the Conclusion, the phrase <are not entitled to qualified immunity> is amended to read: <may not be entitled to qualified immunity>

The amended opinion and amended dissent are filed concurrently with this order.

With those amendments, Judges Hug and Paez voted to deny the petition for panel rehearing. Judge Restani voted to grant the petition for panel rehearing.

The petition for panel rehearing is DENIED.

Judge Paez voted to deny the petition for rehearing en banc and Judge Hug so recommended. Judge Restani recommended that the petition for rehearing en banc be granted. The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration. FED. R. APP. P. 35.

The petition for rehearing en banc is DENIED.

_____

BEA, Circuit Judge, dissenting from the denial of rehearing en banc, joined by KOZINSKI, Chief Judge, and O'SCANNLAIN, GOULD, TALLMAN, CALLAHAN, IKUTA, and N.R. SMITH, Circuit Judges:

The panel majority—over a vigorous dissent by Chief Judge Restani of the Court of International Trade—extends and grants a *Bivens* [1] claim to a prisoner against private com-

_____

[1]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is an extraordinary precedent that gives a party harmed by constitutional error a remedy against federal officials in a way that parallels the § 1983 remedy against state actors. *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

pany prison guards who are unprotected by notions of quali-
fied immunity, available only to government employees.[2] It
does so for personal injury claims between California liti-
gants, for acts and omissions which took place in California,
and for which California tort law provides adequate remedies
through compensatory and punitive damages. In doing so, the
panel majority frankly admits its opinion creates an irreconcil-
able conflict with the decisions of two federal circuits, the
Fourth and Eleventh.[3] Further, it disregards the Supreme
Court's narrowing instructions on *Bivens*, which have limited
recognition of new *Bivens* actions to those situations where,
for one reason or another, damages were unavailable under
both state and federal law. Because such an unprecedented
opinion demands further review, I respectfully dissent from
the denial of rehearing en banc.

## I.   The panel majority erred in unjustifiably recognizing a new *Bivens* action where adequate, and arguably superior, state remedies exist.

In its forty-year *Bivens* history, the Supreme Court has
never provided a *Bivens* claim for relief to a person who—like
the plaintiff in this case, Richard Lee Pollard—had adequate

---

**[2]***See Richardson v. McKnight*, 521 U.S. 399, 401 (1997) (holding that
employees of a private prison management firm are not entitled to quali-
fied immunity from suit by prisoners charging a violation of 42 U.S.C.
§ 1983).

**[3]**And arguably a third. In *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090
(10th Cir. 2005), the Tenth Circuit refused to recognize a Bivens action
brought by a federal prisoner against individual employees of a privately-
operated pretrial detention center because "state or federal law afford[ed]
the prisoner an alternative cause of action for damages for the alleged inju-
ry." *Peoples*, 422 F.3d at 1108. The case was reheard en banc by the Tenth
Circuit, and an evenly divided panel affirmed the district court's dismissal
of the complaint, based on the existence of plaintiff 's alternative remedy
under state negligence law. *Peoples v. CCA Det. Ctrs.*, 449 F.3d 1097
(10th Cir. 2006) (en banc) (per curiam). Thus, while the case carries no
affirmative precedential value, it is still another example of a federal court
refusing to recognize a *Bivens* action in this area.

state tort remedies.[4] In its most recent consideration of
whether to extend *Bivens*, the Court distilled four decades of
jurisprudence into a two-part test:

> [T]he decision whether to recognize a *Bivens* remedy
> may require two steps. In the first place, there is the
> question whether *any* alternative, existing process
> for protecting the interest amounts to a convincing
> reason for the Judicial Branch to refrain from provid-
> ing a new and freestanding remedy in damages. But
> even in the absence of an alternative, a *Bivens* rem-
> edy is a subject of judgment: the federal courts must
> make the kind of remedial determination that is
> appropriate for a common-law tribunal, paying par-
> ticular heed, however, to any special factors counsel-
> ing hesitation before authorizing a new kind of
> federal litigation.

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (emphasis added)
(citation and internal quotation marks omitted).

    A look at the three cases in which the Supreme Court *has*
allowed a *Bivens* recovery reveals the emphasis the Court, and
in turn, our sister circuits, have placed on the requirement that
there be a lack of alternative state common law or statutory
remedies. The Court has recognized two, and only two, con-
texts that permit recovery under *Bivens*: "to provide an other-
wise nonexistent cause of action against individual [federal]
officers alleged to have acted unconstitutionally, or to provide

---

[4]Pollard brought a *Bivens* action against seven employees of the GEO
Group Inc., a private corporation that operates, under contract with the
Bureau of Prisons, the federal prison in which Pollard was incarcerated.
Pollard alleged that GEO employees violated his Eighth Amendment
rights when, after sustaining injuries to both elbows in an accident in
which defendants played no part, he was directed to put on a jumpsuit and
wear a "black box" mechanical restraint device on his wrists, and was not
provided with assistance to feed or bathe himself—all of which caused
him pain and discomfort, but no residual injuries.

a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual [federal] officer's unconstitutional conduct." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Neither circumstance is present in this case.

In *Bivens*, the Court created an implied cause of action for the homeowner for a warrantless, but consensual, entry and a nonconsensual search of his apartment, in violation of his Fourth Amendment rights. The drug agents' alleged conduct was egregious; they manacled the plaintiff in front of his wife and children, searched his entire apartment, and threatened to arrest his entire family. *Bivens*, 403 U.S. at 389. However, the Court noted that, since Bivens consented to the federal agents entering his home, his act precluded a state tort claim for trespass. *Id*. at 394. Thus, absent a right of action implied by the Court from the Constitution, Bivens would have had no means by which to vindicate his Fourth Amendment rights against unreasonable searches and seizures by recovery of damages, and through recovery of damages to deter the individual officers from engaging in such egregious conduct in the future.[5]

Next, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court created an implied cause of action under the Fifth Amendment for a female office worker who alleged gender discrimination while working for Congressman Otto Passman of Louisiana. The Court noted that the plaintiff had no cause of action under Louisiana law for gender discrimination, and because the defendant was no longer in office, injunctive relief against the ex-Congressman would have been futile. *Id*. at 245. Given the need for "an otherwise nonexistent cause of action," *Malesko*, 534 U.S. at 70, the Court created an implied cause of action for monetary relief. *Davis*, 442 U.S. at 248.

---

[5]Bivens was not charged with a crime, thus, suppression of the evidence at a criminal trial was not available as a deterrent against such police conduct.

The last, and most recent, application of *Bivens* liability before the Court occurred thirty years ago in *Carlson v. Green*, 446 U.S. 14 (1980). In *Carlson*, the administratrix of the estate of a deceased federal prisoner brought an action alleging that prison officials had violated the prisoner's Eighth Amendment rights by exhibiting deliberate indifference to the prisoner's serious medical needs—precisely the claims made here by Pollard. The prisoner was alleged to have died as a result. Under Indiana's tort law, the prisoner's cause of action for his pain and suffering did not survive his death. Hence, the administratrix had no legally protected interest to be harmed, and thus, no standing to sue on behalf of decedent's estate. In light of the deterrence rationale in *Bivens*, the Court found an implied cause of action, which provided the only avenue to vindicate the decedent's rights to damages against the individual tortfeasors.[6] *Id*. at 23.

The facts of these cases show how marked a departure is the panel majority's opinion from established precedent.[7] Unlike *Bivens*, *Davis*, and *Carlson*, where the plaintiffs had no existing cause of action and no alternative state remedy, Pollard has a viable suit in state court against each of the jailor defendants under theories of intentional or negligent tort or medical malpractice. California law imposes an affirmative duty of care on jailers:

---

[6]Under the Federal Tort Claims Act, only the United States could be sued, not the individual federal agents.

[7]The Supreme Court has also declined to imply a *Bivens* cause of action in new circumstances not directly related to the existence of alternative state remedies. *See Malesko*, 534 U.S. at 74 (holding that *Bivens* liability does not extend to a corporate entity because the deterrence rationale applies only to individual actors); *Wilkie*, 551 U.S. at 562 (denying *Bivens* claim due to the "difficulty of devising a workable cause of action" to remedy plaintiff 's grievances, which included allegations of trespass and extortion by Bureau of Land Management officials, retaliatory prosecution for his refusal to grant the Bureau an easement on his ranch, and unauthorized survey of his land by Bureau employees).

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of his normal opportunities for protection is under . . . a duty to take reasonable action to protect them against unreasonable risk of physical harm.

Rest. (2d) Torts § 314A, *see also Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1165 n.14 (Cal. 2005) (citing provision with approval).

To recover compensatory damages under California law, Pollard need prove only the individual defendants breached this affirmative duty, and that the breach caused him physical or emotional harm. Additionally, punitive damages are available in an ordinary negligence or medical malpractice action where plaintiff proves defendant acted with "malice" or "extreme indifference to the plaintiff's rights." *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 230 Cal. Rptr. 276, 278-79 (Cal. Ct. App. 1986).

In at least one respect, Pollard's remedy under state law against both jailers and doctors is actually superior to any presumed action he would have under *Bivens*. A *Bivens* plaintiff must prove the defendants acted with "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). But, in a negligence claim, a plaintiff need establish only that the jailers breached their affirmative duty of providing reasonable care. Thus, unlike the few cases in which the Court has recognized a *Bivens* action, Pollard already has a state forum in which to remedy the alleged unconstitutional conduct—with a lesser showing of culpability required, no less. *Bivens* claims were created for the situation in which the plaintiff had no other means of vindicating his constitutional rights in either state or federal court; that policy concern simply does not apply to a case, such as here, where adequate state tort remedies exist.

The panel majority invokes the abstract claim of "lack of uniformity" as a reason to support its assertion that the existence of state tort remedies cannot, on its own, preclude recognition of a new *Bivens* action. But "lack of uniformity" has been a significant part of the Court's analysis only when the plaintiff has shown that he is barred from bringing suit for the alleged constitutional violation in one or more states. In *Carlson*, the plaintiff could not bring her claim because Indiana's survivorship law did not provide her standing to sue for violations of her husband's rights. Because other states allowed survivor claims, there was no actual uniformity unless the Court created a federal cause of action. *Carlson*, 446 U.S. at 25. In *Bivens*, lack of uniformity—mentioned explicitly only in Justice Harlan's concurrence—was relevant only because the plaintiff had showed that, since he had consented to the agents' entrance into his apartment, he had no cause of action under state law. *Bivens*, 403 U.S. at 394. *Davis* did not even address the lack of uniformity claim because the case dealt with the quintessential *Bivens* scenario: there was no existing cause of action, under either federal statutory or state law, for the alleged constitutional violation.

Qualms about "lack of uniformity" are irrelevant where, as here, the plaintiff has an adequate, and arguably superior, tort claim under state law. The plaintiff has not shown—because he cannot—that there is any state which does not provide recovery for that most fundamental tort claim, in which one person's negligent conduct causes physical and/or emotional harm to another. Perhaps the states, as "laboratories of democracy," *Landell v. Sorrell*, 406 F.3d 159, 178 (2d Cir. 2005) (Jacobs, J., dissenting from the denial of rehearing en banc), have adopted slightly different recovery caps or procedural rules, but the essence of the negligent tort claim existed as trespass on the case at common law when the forms of action were in full bloom, and exists today in all fifty states. As such, the panel's lack of uniformity preoccupation is as imagined as is any legal support for its assertion that state law

remedies cannot, on their own, preclude recognition of a *Bivens* action.

## II.   The panel majority creates an irreconcilable circuit split with the Fourth and Eleventh Circuits, which correctly held that *Bivens* does not apply where adequate state remedies exist.

The panel majority's decision, by its own admission, creates a circuit split with the two courts of appeals which held, on indistinguishable facts, that alternative state remedies are sufficient, on their own, to preclude recognition of a new *Bivens* claim. In *Alba v. Montford*, 517 F.3d 1249 (11th Cir. 2008), the Eleventh Circuit refused to recognize a *Bivens* action brought by a federal prisoner incarcerated in a privately-operated correctional facility against prison employees for deliberate indifference to his medical needs in violation of the Eighth Amendment. The court affirmed the district court's 12(b)(6) dismissal on the ground that alternative remedies (state law negligence and medical malpractice claims) existed by which the prisoner could recover from the employees. *Id*. at 1254.

In *Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), the Fourth Circuit refused to recognize a *Bivens* action for a federal prisoner suing individual employees of a privately-operated prison—the very company which is a defendant-appellant here—for alleged violation of his Eighth Amendment rights in failing to provide him with adequate medical care for his diabetes. The Fourth Circuit held that *Bivens* did not recognize an implied right of action for an inmate who had an adequate, and arguably superior, remedy under the state law of negligence.[8] *Id*. at 295.

---

[8]The Fourth Circuit also grounded its dismissal of plaintiff 's *Bivens* action on the independent basis that the private employees of the prison were not federal actors for the purpose of *Bivens*. *Holly*, 434 F.3d at 292-93.

The facts of *Alba* and *Holly* are so similar to this case that the panel majority does not even try to distinguish them. These cases dealt with federal prisoners held in privately-run prisons, who alleged violations of the Eighth Amendment because of inadequate medical care, brought suit against the individual employees, and had alternative state tort claims (under negligence and medical malpractice) under which they could recover. Commendably, the panel majority simply *admits* that its holding with regard to alternative remedies "conflicts with both *Holly* and the Eleventh Circuit's holding in *Alba*." *Pollard v. The GEO Group, Inc.*, 607 F.3d 583, 588 (9th Cir. 2010).[9] The panel's explanation for this disagreement reduces to a policy judgment that plaintiffs in this situation *should* have another forum in which to pursue these claims even though an adequate state remedy exists. Whatever may be the merits of that policy judgment, it is for Congress, not for us, to make.

## III.    Conclusion

For the first time in this country's history, this court has created a "freestanding" federal cause of action against private company employees where adequate, and arguably superior, state remedies are available. As the panel majority contends, it is conceivable that there could be some constitutional violations for which there are no existing, alternative remedies under state tort law. If *Bivens* has any remaining vitality, those are the types of cases to which it was meant to apply. But this is demonstrably not one of those cases. Pollard has adequate, alternative state remedies through which he can

---

[9]As mentioned in footnote 3, the panel majority's decision probably also creates a conflict with the Tenth Circuit's holding in *Peoples v. CCA Det. Ctrs.*, 449 F.3d 1097 (10th Cir. 2006) (en banc), in which an evenly divided en banc panel of the Tenth Circuit affirmed the district court's dismissal—which was based on the existence of alternative remedies under state negligence law—of a *Bivens* action brought by a federal prisoner against individual employees of a privately-operated pretrial detention center.

vindicate his constitutional rights. By recognizing an implied
cause of action in this instance, the panel extends *Bivens* far
beyond its carefully prescribed contours and places this circuit
in direct conflict with each of the other circuits to address the
issue. To my mind, such a remarkable opinion merited a sec-
ond look en banc. I must dissent.

## OPINION

PAEZ, Circuit Judge:

Plaintiff-Appellant Richard Lee Pollard, a federal inmate,
appeals the district court's order dismissing his Eighth
Amendment claims against employees of a private corpora-
tion operating a federal prison under contract with the Bureau
of Prisons.[1] This appeal presents the question of whether the
implied damages action first recognized in *Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics*, 403
U.S. 388 (1971), allows a federal prisoner to recover for vio-
lations of his constitutional rights by employees of private
corporations operating federal prisons. We conclude that it
does.

## I.  BACKGROUND

The GEO Group, Inc. (GEO), under contract with the fed-
eral Bureau of Prisons (BOP), has operated the Taft Correc-
tional Institution (TCI) since December 1997.[2] Pollard is a
federal inmate who, in 2001 and 2002, was incarcerated at
TCI. During his imprisonment, Pollard slipped on a cart left
in a doorway and had to be seen by the prison's medical staff.[3]

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] At the time Plaintiff-Appellant Pollard was incarcerated at TCI, the
Geo Group, Inc., was known as Wackenhut Corrections Corporation.

[3] As the district court dismissed Pollard's suit pursuant to 28 U.S.C.
§ 1915A(b)(1) for failure to state a claim upon which relief may be
granted, we must accept as true all allegations in Pollard's complaint and
construe them in the light most favorable to him. *See Resnick v. Hayes*,
213 F.3d 443, 447 (9th Cir. 2000).

He was x-rayed, diagnosed with possible fractures of both elbows, and placed in a bilateral sling. He was then referred to an orthopedic clinic outside the prison.

Before transporting Pollard to the clinic, a GEO employee directed him to don a jumpsuit. Pollard told the employee that putting his arms through the sleeves of the jumpsuit would cause him excruciating pain, but he was nonetheless required to put it on. Two employees also forced Pollard to wear a "black box" mechanical restraint device on his wrists despite Pollard's complaints about severe pain. An outside orthopedist diagnosed Pollard with serious injuries to his elbows and recommended that his left elbow be put into a posterior splint for approximately two weeks. Upon returning to TCI, Pollard was told that, due to limitations in staffing and facilities, his elbow would not be put into a posterior splint. Pollard claims that, in the following weeks, he was unable to feed or bathe himself and that the GEO employees failed to make alternative arrangements for him. He further alleges that he was required to return to work before his injuries had healed and was again forced to wear the "black box" restraint when returning to the outside orthopedic clinic for a follow-up appointment.

Pollard subsequently filed a *pro se* complaint in the United States District Court for the Eastern District of California, alleging violations of his Eighth Amendment rights and seeking money damages under *Bivens*. His first amended complaint named GEO and eight individuals as defendants. Seven of these individuals were employees of GEO at the time of Pollard's injuries.[4] The eighth, Marshall Lewis, was a doctor employed by the Pacific Orthopedic Medical Group, which GEO had hired to treat Pollard. GEO was subsequently dismissed from the suit due to the Supreme Court's holding in

---

[4]The seven GEO employee defendants were Raymond Andrews, Margaret Minneci, Jonathan Akanno, Robert Spack, Bob Steifer, Everett Uzzle and Becky Maness.

*Correctional Services Corp. v. Malesko*, 534 U.S. 62 (2001), that private prison corporations are not subject to *Bivens* liability. *See* Order Dismissing Complaint With Leave to Amend at 2, *Pollard v. Wackenhut,* No. CV-F-01-6078 (E.D. Cal. Mar. 7, 2002).**[5]**

Pollard's suit against the remaining defendants was assigned to a magistrate judge for screening pursuant to 28 U.S.C. § 1915A(a). The Magistrate Judge issued proposed findings and a recommendation that Pollard's suit be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim. Specifically, the Magistrate Judge concluded that a *Bivens* cause of action was not available to Pollard for two reasons: (1) state law provided him with alternative remedies for his injuries in the form of a tort action for negligence or medical malpractice; and (2) although under contract with the federal government, the GEO employees did not act under color of federal law. Pollard did not file objections to the Magistrate Judge's recommendation, and the district court adopted it in full and dismissed Pollard's complaint.

Shortly thereafter, Pollard, now represented by counsel, filed a motion to vacate the judgment. That motion requested that the dismissal be vacated for the limited purpose of allowing Pollard to assert objections to the Magistrate Judge's findings and recommendation, thereby preserving his right to appeal. The district court did not rule on the motion. Pollard

---

**[5]**We note that it is unclear whether Pollard appeals this dismissal. After GEO was dismissed from the litigation, Pollard nevertheless continued to name the organization as a defendant, although the later district court orders do not address GEO's liability. On appeal, Pollard has again named GEO, but his briefs are focused solely on the GEO employees' liability. Whether or not GEO is properly a party to this appeal, any liability is squarely foreclosed by *Malesko*, 534 U.S. at 63-64, 74 (holding that *Bivens* should not be extended to allow recovery against a private corporation operating a halfway house under contract with the BOP). Thus, we affirm the district court's dismissal of Pollard's claims against The GEO Group, Inc.

ultimately filed a timely notice of appeal, which was served on the Acting Executive Assistant at TCI, but not on any of the individually named defendants personally. Before this court, only five of the original eight individual defendants filed an opposition brief.[6]

We review de novo a district court's grant of a motion to dismiss under 28 U.S.C. § 1915A. *Resnick*, 213 F.3d at 447.

## II.  PROCEDURAL CHALLENGES

The GEO employees initially argue that we should dismiss this appeal because: (1) they were never served with Pollard's opening brief and (2) Pollard failed to enter objections to the Magistrate Judge's findings and recommendation and thereby forfeited his right to appeal. We are not convinced by either of these arguments, which we address in turn.

First, the GEO employees argue that because they were not served with a copy of Pollard's opening brief, this court lacks jurisdiction over this appeal.[7] Fed. R. App. Proc. 25(b) provides: "Unless a rule requires service by the clerk, a party must, at or before the time of filing a paper, serve a copy on the other parties to the appeal or review. Service on a party represented by counsel must be made on the party's counsel." It is undisputed that Pollard only served his opening brief on Dale Patrick, identified as the Acting Executive Assistant for TCI.

---

[6]Raymond Andrews was not included in Pollard's appeal from the district court's judgment, Everett Uzzle passed away in March 2008, and there is no evidence that physician Marshall Lewis was ever served in the original lawsuit or this appeal.

[7]The GEO employees also point out that they were never served with the notice of appeal, but concede that under Fed. R. App. P. 3, such a failure does not affect the validity of the appeal. We agree, especially in light of the liberal construction Fed. R. App. P. 3 is due. *Smith v. Barry*, 502 U.S. 244, 248 (1992) ("Courts will liberally construe the requirements of Rule 3.").

Fed. R. App. P. 3(a)(2) provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." *See Azizian v. Federated Dep't Stores*, 499 F.3d 950, 961 (9th Cir. 2007) (noting, in the context of a violation of Fed. R. App. P. 7, that Fed. R. App. P. 3(a)(2) grants to this court's "sound discretion" whether to dismiss an appeal). In deciding whether such a deficiency warrants dismissal, we are entitled to consider whether Pollard's failure resulted in prejudice to the GEO employees or to this court. *See Everest & Jennings, Inc. v. E & J Mfg. Co.*, 263 F.2d 254, 262 (9th Cir. 1959) (holding that, because the opposing party could demonstrate no prejudice, a failure to file briefs in accordance with court rules did not warrant dismissal); *Recinos De Leon v. Gonzales*, 400 F.3d 821, 822 (9th Cir. 2005) (published order) (considering prejudice to the opposing party and to the court in deciding whether to dismiss an appeal based on the late filing of a brief).

**[1]** The GEO employees have not alleged—nor can we surmise—any prejudice resulting from Pollard's failure to comply strictly with the requirements of Rule 25(b). Pollard's counsel has provided the court with an affidavit (and accompanying telephone records) declaring that he contacted GEO and was specifically instructed by a representative of GEO's General Counsel to send legal correspondence to TCI. We have no reason to doubt that Pollard's counsel was so instructed, as the same law firm represents GEO and the individually named defendants on appeal. Indeed, the appellees' answering brief was filed on behalf of all those parties (other than the physician not employed by GEO, Marshall Lewis).[8]

---

[8]We further note that GEO and its employees were twenty-one months late in filing their answering brief. In a motion before this court—filed over a year after their answering brief was due—appellees argued that the district court lacked personal jurisdiction and that this court therefore lacked jurisdiction to consider the appeal. That motion was denied—and GEO was ordered to file an answering brief—in April 2009.

Thus, we exercise our discretion under Fed. R. App. P. 3(a)(2) and decline to dismiss this appeal for this alleged deficiency.

**[2]** Second, the GEO employees argue that dismissal is warranted because Pollard failed to file timely objections to the Magistrate Judge's findings and recommendation. The GEO employees contend that the failure to file objections constitutes a waiver of Pollard's right to appeal. But this court has held that such a failure does not, "standing alone, ordinarily constitute a waiver of the [appeal]." *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991) (citing *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983)). Rather, *Martinez* counsels that failure to object to a magistrate judge's findings and recommendations "is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal." *Id.* Because Pollard was proceeding *pro se* at the time of the alleged waiver, and because the GEO employees have demonstrated no prejudice resulting from Pollard's failure to file objections, we decline to exercise our discretionary authority to dismiss this appeal.

## III. DISCUSSION

We turn to the merits of this appeal. The district court dismissed Pollard's suit pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[9] Specifically, the Magistrate Judge's findings and recommendation concluded that a *Bivens* action was not available to Pollard because: (1) the GEO employees do not act under color of federal law; and (2) Pollard could pursue a claim for damages against the GEO employees under state tort law. We address these issues in turn and conclude that (1) the GEO employees act under color of federal law for purposes of *Bivens* liability and (2) the availability of a state

---

[9]Neither the Magistrate Judge nor the district judge reached the question of whether Pollard's allegations, if true, would amount to a cognizable claim under the Eighth Amendment. We leave it to the district court, if necessary, to make that determination upon remand.

tort remedy does not foreclose Pollard's ability to seek redress under *Bivens*. We recognize that the former holding directly conflicts with the Fourth Circuit's holding in *Holly v. Scott*, 434 F.3d 287, 294 (4th Cir. 2006), and the latter conflicts with both *Holly* and the Eleventh Circuit's holding in *Alba v. Montford*, 517 F.3d 1249, 1254 (11th Cir. 2008).[10] We discuss our disagreement with our sister circuits *infra*.

### 1.   Federal Action

**[3]** In *Bivens*, the Supreme Court recognized an implied cause of action under the Fourth Amendment for injury caused "by a federal agent acting under color of his authority . . . ." 403 U.S. at 389. It is widely accepted that *Bivens* provides a cause of action only against an official "acting under color of federal law." *See, e.g.*, *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003) ("Morgan's Complaint sufficiently sets forth the elements of a *Bivens* claim by alleging a violation of his constitutional rights by agents acting under the color of federal law."). Thus, the threshold question presented here is whether the GEO employees can be considered federal agents acting under color of federal law in their professional capacities. We conclude that they can.

---

[10]The dissent suggests that this latter holding is also in conflict with Tenth Circuit law. *See* Dissenting Op. at 19717 (stating that "[u]ntil now, the federal circuits that have addressed the issue have held correctly that a prisoner may not maintain such an action" and citing *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090 (10th Cir. 2005), *vacated in relevant part and aff'd by equally divided en banc panel*, 449 F.3d 1097 (10th Cir. 2006) (per curiam), *cert. denied*, 549 U.S. 1056 (2006) and 549 U.S. 1063 (2006). In fact, the portion of the Tenth Circuit's opinion addressing this issue was vacated by an equally divided en banc panel under Tenth Circuit rules and lacks any precedential value. *Peoples*, 449 F.3d at 1099 ("We are evenly divided, however, for substantially the same reasons as are set forth in the panel's majority and dissenting opinions, on the question whether a *Bivens* action is available against employees of a privately-operated prison. Because there is no majority on the en banc panel, the district court's ruling in *Peoples II* on this issue is affirmed by an equally divided court.").

We note at the outset that the one federal court of appeal to have directly addressed the question—the Fourth Circuit—has held that employees of private corporations operating federal prisons are not federal actors for purposes of *Bivens*. *Holly*, 434 F.3d at 294. *See also Alba*, 517 F.3d at 1254 (assuming, without deciding, that a privately operated prison is a government actor for purposes of *Bivens* liability). In *Holly*, as in this case, the defendants were employees of GEO, which the Fourth Circuit described as "a wholly private corporation in which the federal government has no stake other than a contractual relationship." 434 F.3d at 291. Reasoning that "[a]pplication of *Bivens* to private individuals simply does not find legislative sanction," the *Holly* majority held that the GEO employees were not federal actors for purposes of *Bivens*. *Id.* at 292-94.

**[4]** Neither the Supreme Court nor our court has squarely addressed whether employees of a private corporation operating a prison under contract with the federal government act under color of federal law. That said, we have held that private defendants can be sued under *Bivens* if they engage in federal action. *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1337-38 (9th Cir. 1987) (citing *Ginn v. Mathews,* 533 F.2d 477 (9th Cir. 1976), *abrogated on other grounds by Rendell-Baker v. Kohn,* 457 U.S. 830, 838-43 (1982)); *see also Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004) ("[T]o the extent that [Plaintiff] sought recovery from individual employees of the [private corporation managing the federal prison], the case had to [be] brought as a *Bivens* action."). In determining whether a private individual has engaged in federal action, we have looked to "state action" principles developed by the Supreme Court in suits brought under 42 U.S.C. § 1983. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("[W]e apply similar tests to determine whether federal action exists to support a *Bivens* claim or to determine whether State action will permit a § 1983 cause of action."); *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429, 1432 n.3 (9th Cir. 1989)

("The standards for determining whether an action is governmental are the same whether the purported nexus is to the state or to the federal government."); *see also Schowengerdt*, 823 F.2d at 1339 n.17 (suggesting the use of § 1983 state action tests to identify federal action in the *Bivens* context).

Other circuits have also recognized the similarity of the § 1983 and *Bivens* doctrines. *See Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (per curiam) (noting that bodies of law relating to § 1983 and *Bivens* actions have been assimilated in most respects); *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) ("Though the two actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits." (footnote and internal quotations omitted)); *Morast v. Lance*, 807 F.2d 926, 931 (11th Cir. 1987) ("[T]he concept of action under color of federal law for purposes of a *Bivens* action is almost identical to the doctrine of action under color of state law for purposes of a § 1983 action . . . ."). Indeed, even the Supreme Court has recognized a connection between the two doctrines, although at a high level of abstraction. *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("Though more limited in some respects not relevant here, a *Bivens* action is the federal analog to suits brought against state officials under [§ 1983].").

**[5]** In the § 1983 context, we have recognized a number of tests for identifying state action. *See Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (describing the government nexus test, the joint action test, the public function test and the state compulsion test). For our purposes, the most applicable is the "public function" test: a private entity may engage in state action where it exercises "powers traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). In *West v. Atkins*, the Supreme Court applied a variation of that test in concluding that private correctional employees under contract with North Carolina were amenable to suit under § 1983 for failing to render constitutionally adequate medical care. *See* 487 U.S. 42, 49-51

(1988). The Court found state action present in the § 1983 action because the defendant exercised power "possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law." *Id.* at 49 (internal quotation marks and citation omitted). Ten years before *West*, the Court had recognized an obligation on the part of state correctional employees "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (extending *Bivens* liability to federal correctional employees). In finding such an obligation under the Constitution, the *Estelle* Court reasoned that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103.

Similarly, in evaluating whether a prison physician employed as an independent contractor was amenable to suit under § 1983, the *West* Court stated:

> If [the physician] misused his power by demonstrating deliberate indifference to [the prisoner's] serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [the prisoner] by incarceration and to deny him a venue independent of the State to obtain needed medical care.

*West*, 487 U.S. at 55. In reaching this conclusion, the Court noted that "[i]t is only those physicians authorized by the State to whom the inmate may turn" and that "[u]nder state law, the only medical care [the prisoner] could receive for his injury was that provided by the State." *Id.* The Court rejected the notion that, because the physician was an independent contractor rather than a direct employee of the prison, the state action analysis would change. Instead, the Court held that, "[w]hether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship

among the State, the physician, and the prisoner." *Id.* at 56. Thus, the Court concluded, because the private employee was "fully vested with state authority to fulfill essential aspects" of the state's duty to provide medical care to state prisoners, he was fulfilling a public function and was therefore amenable to § 1983 liability. *Id.* at 57.

**[6]** In our view, there is no principled basis to distinguish the activities of the GEO employees in this case from the governmental action identified in *West*. Pollard could seek medical care only from the GEO employees and any other private physicians GEO employed. If those employees demonstrated deliberate indifference to Pollard's serious medical needs, the resulting deprivation was caused, in the sense relevant for the federal-action inquiry, by the federal government's exercise of its power to punish Pollard by incarceration and to deny him a venue independent of the federal government to obtain needed medical care. On this point, *West* is clear.

**[7]** The Fourth Circuit does not share our understanding of *West*. The *Holly* majority concluded that *West*'s reasoning does not apply to privately operated federal prisons because the relationship among the state, the physician and the prisoner is "very different in this case, where the correctional facility is privately run, than in *West* . . . , where the state itself was directly responsible for managing the prison." *Holly*, 434 F.3d at 294. Curiously, the Fourth Circuit's reading of *West* suggests that independent contractors are state actors when directly hired by the state, but that employees of an independent contractor are not state actors because they are not hired by the state. We cannot subscribe to such an illogical reading of *West*. As Judge Motz noted in her concurrence in *Holly*, *West* itself rejected the notion that "by adding an additional layer, the government can contract away its constitutional duties." *Id.* at 299 n.1 (Motz, J., concurring in the judgment). Instead, *West* makes clear that " '[c]ontracting out' care '*does not* relieve' the government of its 'constitutional duty' to provide adequate care or 'deprive inmates of the

means to vindicate their Eighth Amendment rights.' " *Id.*
(quoting *West*, 487 U.S. at 55-56).

Nor do we find convincing the Fourth Circuit's reliance on
*Richardson v. McKnight*, 521 U.S. 399 (1997). *See Holly*, 434
F.3d at 293. Contrary to the Fourth Circuit's holding, that
case does not stand for the proposition that private prison
employees never act under color of federal or state law. *See
id.* Indeed, the Court in *Richardson* expressly noted that it did
"not address[ ] whether the defendants are liable under § 1983
even though they are employed by a private firm." 521 U.S.
at 413. Rather, the Court there addressed only the question of
whether private prison guards at state prisons are entitled to
qualified immunity when sued for constitutional violations,
not whether those guards acted under color of federal or state
law. See *id.* As other cases confirm, the immunity question is
fundamentally distinct from the governmental action question
we encounter here. *See Wyatt v. Cole*, 504 U.S. 158, 168-69
(1992) (holding that "private defendants" were not entitled to
qualified immunity, but remanding for a determination of
whether they were liable as government actors); *Jensen v.
Lane County*, 222 F.3d 570, 580 (9th Cir. 2000) (holding that
a private physician, contracting with a county psychiatric hos-
pital, was liable as a state actor but was not entitled to quali-
fied immunity).

In *Richardson*, the Court explained that qualified immunity
applies only where "a tradition of immunity was so firmly
rooted in the common law . . . that Congress would have spe-
cifically so provided had it wished to abolish the doctrine."
521 U.S. at 403 (internal quotation marks and citation omit-
ted). The Court noted that, although private individuals had
operated correctional facilities in the 18th and 19th centuries,
those individuals did not historically enjoy qualified immu-
nity. *Id.* at 404-07. Because there was therefore no " 'firmly
rooted' tradition of immunity applicable to privately
employed prison guards," those private guards were not enti-
tled to qualified immunity. *Id.* at 404, 412.

Contrary to the Fourth Circuit's understanding, the *Richardson* Court's observation that private individuals "were heavily involved in prison management during the 19th century," 521 U.S. at 405, does not mean that private prison guards exercise a power that is not "traditionally exclusively reserved to the State" under the public function test for identifying state action. *Holly*, 434 F.3d at 293. The *Holly* majority looked to the "operation of the prison, not the fact of [the prisoner's] incarceration," to conclude that private prison guards did not perform a traditionally public function. *Id.* The *Holly* majority, however, does not provide, nor can we identify, any support for such a distinction. The relevant function here is not prison management, but rather incarceration of prisoners, which of course has traditionally been the State's "*exclusive* prerogative." *Rendell-Baker*, 457 U.S. at 842 (internal quotation marks and citation omitted). *West* reflects this understanding that the relevant function is incarceration, explaining that a prisoner's injury from inadequate medical care would be "caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [the prisoner] by incarceration." 487 U.S. at 55.

**[8]** Likewise, in the § 1983 context, our sister circuits have routinely recognized that imprisonment is a fundamentally public function, regardless of the entity managing the prison. The Fifth Circuit, for example, has held that "confinement of wrongdoers—though sometimes delegated to private entities —is a fundamentally governmental function. These [private] corporations and their employees are therefore subject to limitations imposed by the Eighth Amendment." *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (per curiam). Likewise, the Sixth Circuit has held that private prison employees "perform[ ] the 'traditional state function' of operating a prison." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *see also Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (per curiam); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). And, in his dissent in *Richardson*, Justice Scalia,

joined by three other Justices, noted that "private prison management firms, who perform the same duties as state-employed correctional officials, . . . exercise the most palpable form of state police power." *Richardson*, 521 U.S. at 414 (Scalia, J., dissenting).

**[9]** In accord with *West* and other federal courts of appeal, we hold that there is but one function at issue here: the government's power to incarcerate those who have been convicted of criminal offenses. We decline to artificially parse that power into its constituent parts—confinement, provision of food and medical care, protection of inmate safety, etc.— as that would ignore that those functions all derive from a single public function that is the sole province of the government: "enforcement of state-imposed deprivation of liberty." *Richardson*, 521 U.S. at 416 (Scalia, J., dissenting) (noting that this function is "a prototypically governmental function"). Because that function is "traditionally the *exclusive* prerogative of the [government]," it satisfies the "public function" test under *Rendell-Baker*. 457 U.S. at 842 (internal quotation marks and citation omitted).

Finally, we note that in *Malesko*, the Supreme Court explicitly left open the possibility that private prison employees could act under color of federal law and therefore face *Bivens* liability. The Court, in holding that a corporate entity operating a federal prison could not be subject to *Bivens* liability, noted that "the question whether a *Bivens* action might lie against a private individual is not presented here." *Malesko*, 534 U.S. at 65. The dissent, authored by Justice Stevens, confirmed that this question remained open:

> The Court recognizes that the question whether a *Bivens* action would lie against the individual employees of a private corporation like Correctional Services Corporation (CSC) is not raised in the present case. Both CSC and [Malesko] have assumed *Bivens* would apply to [private prison employees],

> and the United States as *amicus* maintains that such
> liability would be appropriate under *Bivens*. . . .
> [T]he reasoning of the Court's opinion relies, at least
> in part, on the availability of a remedy against
> employees of private prisons.

*Id.* at 79 n.6 (Stevens, J., dissenting) (internal citation omit-
ted). Thus, despite the contrary holding in the Fourth Circuit,
we conclude that the GEO employees act under color of fed-
eral law for purposes of *Bivens* liability.[11]

## 2.   Availability of a *Bivens* Remedy

Even where defendants have engaged in federal action, we
do not always allow *Bivens* suits to go forward. We begin
with a review of the Supreme Court's evolving *Bivens* juris-
prudence to help illuminate when we will recognize an
implied right of action against individuals engaged in federal
action.

In *Bivens*, the Supreme Court "recognized for the first time
an implied private action for damages against federal officers
alleged to have violated a citizen's constitutional rights."
*Malesko*, 534 U.S. at 66. In the years following *Bivens*, the
Court recognized a *Bivens* cause of action on only two occa-
sions. In *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the
Court held that the plaintiff stated a cause of action for money
damages against her former employer, a member of the
United States Congress, for employment discrimination in
violation of the Due Process Clause of the Fifth Amendment.

---

[11]We note that the GEO employees may also qualify as federal actors
under the "nexus" test as articulated by *Brentwood Academy v. Tennessee
Secondary School Athletic Ass'n*, 531 U.S. 288 (2001). That test asks
whether "there is such a close nexus between the State and the challenged
action that seemingly private behavior may be fairly treated as that of the
State itself." *Brentwood*, 531 U.S. at 295 (internal quotations omitted).
Given the clear applicability of the "public function" test, we need not
undertake this analysis.

The following year, in *Carlson v. Green*, 446 U.S. 14, 24 (1980), the Court held that a federal inmate could bring suit for money damages against federal prison officials under the Eighth Amendment.

Since *Carlson* and *Davis,* the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68. Indeed, the Court has "rejected invitations to extend *Bivens*" in every new factual and legal context presented after *Carlson*. *Id.* at 70; *see, e.g.*, *id.* at 63 (declining to allow an implied right of action for an inmate alleging Eighth Amendment violations against a private corporation operating a federal prison); *FDIC v. Meyer*, 510 U.S. 471, 473 (1994) (declining to allow an implied right of action against a federal agency); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (declining to allow an implied right of action for disabled persons who were allegedly denied Social Security benefits in violation of the Fifth Amendment); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to allow an implied right of action for a federal employee allegedly disciplined in violation of the First Amendment); *Chappell v. Wallace*, 462 U.S. 296, 297 (1983) (declining to allow an implied right of action for military personnel alleging racial discrimination by superior officers). Although *Bivens* remains intact, it is apparent that the era Justice Scalia referred to as the "heady days in which [the Supreme] Court assumed common-law powers to create causes of action" is no more. *Malesko*, 534 U.S. at 75 (Scalia, J., concurring).

The Court's most recent consideration of whether to extend *Bivens* distills its prior three decades of jurisprudence into a two part test:

> [O]ur consideration of a *Bivens* request follows a familiar sequence, and on the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision

> whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (internal quotations and citations omitted). Applying *Wilkie*'s two-part test, we hold that a *Bivens* cause of action is available here.

### a.  *Application of the* Wilkie *Two-Part Test*

**[10]** Under *Wilkie*, we first must identify whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* Second, even in the absence of an alternative, we must look to any "special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* (internal quotation marks and citation omitted). We address each issue in turn and conclude that Pollard should be entitled to pursue his Eighth Amendment claim against the GEO employees.

#### (i)  Wilkie *Part One: Alternative Existing Processes*

The GEO employees argue that because Pollard can pursue a state law negligence action for damages, he has an "alternative, existing process" for protecting his interests and thus should not be afforded a *Bivens* remedy.[12] The Magistrate

---

[12]In *Malesko*, the Court noted that one of the plaintiff's alternative existing processes for seeking a remedy was his "full access to remedial mech-

Judge agreed, stating in his recommendation and findings that "[i]n light of the existing alternative remedies available to [Pollard], the court finds that extending *Bivens* would not provide [Pollard] with an otherwise nonexistent cause of action." Neither the Ninth Circuit nor the Supreme Court has ever addressed whether the existence of a state remedy, alone, is sufficient to displace the *Bivens* remedy. We conclude that the mere availability of a state law remedy does not counsel against allowing a *Bivens* cause of action.

In evaluating whether alternative, potential remedies preclude a *Bivens* action, the Court has consistently stressed that only remedies crafted *by Congress* can have such a preclusive effect. For example, in *Carlson,* the Court held that where

---

anisms established by the BOP." 534 U.S. at 74. Although GEO employees' counsel could not identify at oral argument whether there were any BOP administrative remedies available to Pollard, it would appear that none exist. The BOP's Administrative Remedy Program applies to those incarcerated in BOP facilities and half-way houses operated under contract with the BOP. 28 C.F.R. § 542.10(b) (2002). It does not apply to individuals confined in "other non-federal facilities." *Id.* Thus, according to a report released by the Department of Justice in 2008:

> [t]he Administrative Remedy Program is administered differently for inmates in private facilities. Should an inmate at a private facility wish to appeal a local decision, the inmate may file with the local institution. Inmates who wish to grieve a specific BOP matter (which is limited to classification, designation, sentence computation, reduction of sentence, removal or disallowance of Good Conduct Time, or issues directly involving BOP staff) may utilize the progressive BOP administrative remedy process available to all federal inmates.

U.S. Dep't of Justice, Legal Resource Guide to the Federal Bureau of Prisons 35 (2010), *available at* http://www.bop.gov/news/PDFs/legal_guide. pdf. As Pollard's claim does not fall within any of the "specific BOP matter[s]," he does not have a BOP administrative remedy under 28 C.F.R. § 542.10. Nor did GEO employees' counsel identify any administrative remedies provided by the corporation itself. In sum, whatever effect the BOP remedies may have had on the *Malesko* Court's determination of the propriety of extending *Bivens*, it is irrelevant here.

"defendants show that Congress has provided an alternative remedy which it explicitly declare[s] to be a *substitute* for recovery directly under the Constitution and view[s] as equally effective," no *Bivens* remedy is available. *Carlson*, 446 U.S. at 18-19. Likewise, in *Bush v. Lucas*, the Court held that the *Bivens* remedy for an alleged First Amendment violation was precluded by an "elaborate remedial system that has been constructed step by step" by Congress. 462 U.S. at 388; *see Schweiker*, 487 U.S. at 425 (holding that a remedial scheme created by Congress, even if incapable of addressing all of plaintiff's injuries, precluded a *Bivens* action).

In *Malesko*, however, the Court implicitly suggested that non-congressionally created remedies might displace *Bivens*. *See* 534 U.S. at 70. There, the Court noted that it had consistently declined to extend *Bivens* except where the extension would "provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or [would] provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Id.* (emphasis in original). The GEO employees, like the Fourth and Eleventh Circuits, place great weight on this "any alternative remedy" language. They argue that it shows that state tort law can preclude a *Bivens* remedy. *See Alba*, 517 F.3d at 1253-55; *Holly*, 434 F.3d at 295-97.[13] *Wilkie*, however, demonstrates that this reads too much into the Court's words in *Malesko*.

[13]The dissent also misreads *Malesko* to hold that "[t]he availability of an adequate alternative remedy should end the analysis [of whether to extend *Bivens*]." Dissenting Op. at 19726. *Malesko*, however, did not set forth any such blanket rule. Rather, *Malesko* reasoned that because the plaintiff had alternative remedies against individual officers—and because he was not seeking recovery against an individual officer—allowing plaintiff to proceed with an implied cause of action would not serve the core deterrence goals of *Bivens*. *See* 534 U.S. at 73-74. Here, however, Pollard *is* seeking a remedy against an individual officer, and thus *Malesko* is not controlling.

**[11]** In *Wilkie*, the Court made clear that the mere existence of an alternative state remedy, alone, did not preclude a *Bivens* action. There, the Court noted that the plaintiff had "alternative, existing" remedies for the alleged violation of his Fifth Amendment rights, including state tort remedies, administrative claims against the Bureau of Land Management, and tort claims under the Federal Tort Claims Act. 551 U.S. at 553-54. Even though the plaintiff undoubtedly had a "tort remedy" available to him, the Court concluded that because "the forums of defense and redress open to [the plaintiff] are a patchwork, an assemblage of state and federal, administrative and judicial benches applying regulations, statutes and common law rules," "[i]t would be hard to infer that Congress expected the Judiciary to stay its *Bivens* hand, but equally hard to extract any clear lesson that *Bivens* ought to spawn a new claim." *Id.* at 551, 554. Thus, the mere existence of a potential state law claim did not suffice to preclude a *Bivens* action.

Instead, the *Wilkie* opinion requires that we not simply inquire into the existence of alternative remedies generally, but rather that we ask whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 550. For two reasons, state court remedies, alone, do not amount to such a "convincing reason."

**[12]** First, as *Wilkie* implies and the Court has repeatedly recognized, we consider alternative remedies because the judicially created *Bivens* remedy should yield to congressional prerogatives under basic separation of powers principles. *Id.* at 554 (looking to alternative remedies for evidence that "Congress expected the Judiciary to stay its *Bivens* hand"); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[ ] judicial imposition of a new substantive liability."); *Schweiker*, 487 U.S. at 423 ("When the

design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations . . . we have not created additional *Bivens* remedies."); *Bush*, 462 U.S. at 378 ("When Congress provides an alternative remedy, it may . . . indicate its intent . . . that the Court's power should not be exercised."); *Carlson*, 446 U.S. at 23 ("The question whether [an] action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution."). So too has this circuit recognized the importance of deferring to Congress in this arena. *See W. Radio Servs. Co. v. United States Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (finding remedies available under the Administrative Procedure Act indicative of congressional intent to displace *Bivens*); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003) (noting that a *Bivens* claim can be precluded when Congress either provides an alternative remedy or provides a mechanism for relief it considers adequate to remedy constitutional violations); *Berry v. Hollander*, 925 F.2d 311, 314 (9th Cir. 1991) ("So long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment." (internal quotation marks omitted)).

**[13]** Second, the Court has recognized that the policy "obvious[ly]" motivating *Bivens* was "that the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules." *Carlson*, 446 U.S. at 23. In *Carlson*, the Court made a point of noting that the plaintiff's action would have failed under the survivorship law of the forum state. *Id.* at 17 n.4. The Court emphasized that "only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct." *Id.* at 23. As we recently noted in *Castaneda v. United States*, 546 F.3d 682, 701 (9th Cir. 2008), *overruled on other grounds by Hui v. Castaneda*, No.

08-1529 (May 3, 2010),[14] "the remedies we and the Supreme Court have held to preclude *Bivens* . . . applied uniformly throughout the republic." Although *Castaneda* is no longer good law, this observation was not addressed by the Supreme Court and comports with our analysis of the Court's *Bivens* jurisprudence.[15] *See Schweiker*, 487 U.S. at 414 (holding that Social Security regulations and procedures precluded a *Bivens* action); *Bush*, 462 U.S. at 368 (holding that federal civil service regulations precluded a *Bivens* remedy).

[14] If we were to allow state tort law to preclude a *Bivens* action for Pollard and similarly situated prisoners, the liability of federal officials for constitutional violations would no longer be governed by uniform rules. The substance, procedural requirements, and remedies of state tort law—especially with regard to causes of action for negligence and medical malpractice—vary widely from state to state. For example, assuming Pollard were to bring a claim for medical malpractice under California law, the cap on his non-economic damages would be $250,000. *See* Cal. Civ. Code § 3333.2. But, under Oregon law (where Pollard was transferred in the midst of this litigation), Pollard's medical malpractice claim would not be subject to the state's non-economic damages cap. *See Lakin v. Senco Prods.*, 987 P.2d 463 (Or. 1999) (holding that non-economic damages cap mandated by Or. Rev. Stat. § 31.710(1) is unconstitutional as applied to common-law negligence claims). Likewise, the statute of limitations for

---

[14]Although involving *Bivens* claims against federal officers, *Hui v. Castaneda* was ultimately decided solely on the issue of absolute immunity under 42 U.S.C. 233(a). It therefore has no direct bearing on this case.

[15]The dissent contends that *Malesko* disproves this rule, arguing that "the Court declined to recognize a *Bivens* action *because of state remedies*." Dissenting Op. at 19722 (emphasis added). That is not *Malesko*'s holding. *Malesko* also relied on administrative remedies fashioned by the BOP—which apply uniformly across federal prisons—in reaching its holding. *See* 534 U.S. at 74. Furthermore, as discussed above, Malesko also relied on the fact that the plaintiff was not seeking recovery against an individual officer. *See id.* at 73-74, 122 S.Ct. 515.

bringing his suit under California law would be three years after the date of his injury or one year after he discovered the injury, whichever came first. *See* Cal. Civ. Proc. Code § 340.5. But Oregon law would require Pollard to bring his suit within two years of discovering the injury. *See* Or. Rev. Stat. § 12.110(4). We need not belabor the obvious point that state tort remedies are anything but "uniform."

**[15]** The *Bivens* inquiry turns in part on "bedrock principles of separation of powers," *Malesko*, 534 U.S. at 69, but concluding that a *Bivens* cause of action must yield to state tort law does little to demonstrate deference to congressional prerogatives. Thus, we conclude that state remedies alone are insufficient to displace a *Bivens* remedy under the first prong of the *Wilkie* test.

> *(ii)* Wilkie *Part Two: "Special Factors Counselling Hesitation"*

*Wilkie*'s second step requires us to "weigh[ ] reasons for and against the creation of a new cause of action, the way common law judges have always done." 551 U.S. at 554. In other words, we must look to any "special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* at 550 (internal quotation marks and citation omitted). The Court has emphasized that we must differentiate "*special*" factors from "*any*" factors. *McCarthy v. Madigan*, 503 U.S. 140, 151 (1992), *superseded by statute*, Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321, *as recognized in Booth v. Churner*, 532 U.S. 731, 740-41 (2001). Although the Court has never compiled an exhaustive list of these "special" factors, some that the Court has previously considered include: (1) whether it is feasible to create a workable cause of action, *Wilkie*, 551 U.S. at 555; (2) whether extending the cause of action would undermine *Bivens*'s deterrence goals, *Malesko*, 534 U.S. at 70-71; (3) whether an extension of *Bivens* would impose asymmetric liability costs on privately operated facilities as compared to government-

operated facilities, *id.* at 72; and (4) whether unique attributes of an area, like the military, give reason to infer that congressional inaction is deliberate, *see Chappell*, 462 U.S. at 304. As the Court has already recognized a *Bivens* cause of action for inmates in government-run federal prisons, it appears that prisons do not have the types of unique attributes that counseled against recognizing a *Bivens* action for claims against the military in *Chapell*. Nor did the Court allude to any such unique attributes in *Malesko*. Thus, we address only the first three of these considerations.

### *(a) Feasibility*

**[16]** Pollard alleges a basic Eighth Amendment cause of action under *Bivens*. Since *Carlson*, courts have regularly recognized this type of action against federal prison officials, and the applicable standards are clear. *See, e.g.*, *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990); *Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986); *Gardner v. Wilson*, 959 F. Supp. 1224, 1228 (C.D. Cal. 1997); *Lowrance v. Coughlin*, 862 F. Supp. 1090 (S.D.N.Y. 1994). There is no need for the district court to craft new standards or remedies to address Pollard's claims. Accordingly, there are no feasibility concerns that would counsel hesitation under *Wilkie*.

By contrast, the regime the GEO employees propose—allowing a *Bivens* cause of action to go forward only where a plaintiff would otherwise have no alternative remedy—would likely be difficult to administer. The Eighth Amendment protects against conditions of confinement that "involve the wanton and unnecessary infliction of pain . . . [or are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But many acts meeting that standard may not be covered by state tort law. For example, a prison inmate deprived of access to a toilet for several days would have a strong case against prison officers under *Bivens*. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure

to human waste, even for 36 hours, would constitute a sufficiently serious deprivation to violate Eighth Amendment); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (per curiam) (citing numerous cases on minimum level of hygiene required by the Eighth Amendment). But, although tort law imposes a duty on those with custody of another to protect that person "against unreasonable risk of physical harm," Restatement (Second) of Torts § 314A(1)(a), (4) (1965), it is unclear whether deprivation of a toilet would amount to "physical harm." Likewise, it is unclear whether a deprivation of outdoor exercise would amount to a tort violation, despite our conclusion that such deprivation constitutes an Eighth Amendment violation in certain circumstances. *See Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979).

Nor is it apparent whether a prisoner could recover under state law for the denial of "basic necessities such as socks, toilet paper, and soap." *See Irabor v. Perry County Corr. Ctr.*, No. 06-0483-BH-C, 2008 WL 1929965, at *2 (S.D. Ala. Apr. 30, 2008). Although a district court considering a constitutional claim based on such injuries stated that the plaintiff had "adequate state tort remedies available . . . including, but not limited to, negligence and wantonness," *id.* at *4, we find it somewhat less obvious which theory of state tort law, if any, would provide the plaintiff in that case with an opportunity for relief. A plaintiff might also seek to recover under an intentional infliction of emotional distress theory of recovery, but that cause of action has its own problems given that prison disciplinary measures regularly cause emotional distress by design.

These are not isolated examples, and the inquiry becomes even more complicated when a prisoner alleges an Eighth Amendment violation as the result of a combination of factors that may not, on their own, constitute a violation of state tort law. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so

alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." (emphasis omitted)). Indeed, this very problem of identifying whether state common law provides a remedy is likely to arise any time constitutional and state common law regulate similar conduct in different ways.

The dissent argues that these obvious difficulties are irrelevant because Pollard's injuries are "certainly . . . covered by state tort law." Dissenting Op. at 19727. But this decision will have implications far beyond Pollard's suit. Under the GEO employees' proposed framework, as adopted by the dissent, in each case a court would need to identify whether state remedies provide relief for the plaintiff's particular claim. While in some instances that may prove an easy task, in others, like those identified above, it may be quite difficult. For questions of first impression, it would require a federal court to examine: (1) state common law, (2) state statutes, (3) state administrative regulations, (4) state constitutional provisions, (5) procedural requirements attendant to each alternative claim (including statutes of limitations, exhaustion requirements, etc.), and (6) the existence of a cause of action to enforce state law. Furthermore, under the GEO employees' proposed framework, courts would potentially need to consider whether a plaintiff's claims would be frustrated by any viable defenses under state law. For example, a privately operated prison might assert the "government contractor" defense if sued under state tort law. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) (recognizing a defense immunizing federal contractors from liability where the contractor has conformed its behavior to precise government specifications and, if necessary, has warned the government of risks posed by those specifications).[16] Thus, unless such defenses are assessed prior to

---

[16]The dissent states that there "is no reason to think that . . . the government contractor defense . . . is applicable here." Dissenting Op. at 19727.

dismissing a *Bivens* action because of alternative state reme-
dies, a prisoner in a privately operated facility may be fore-
closed from relief, even though a prisoner housed in a
governmentally run prison would have a cause of action. But,
in the context of prisoner litigation, a court would often be
required to make these types of determinations before the
defendant has asserted any defenses or made any filing what-
soever (as was the case here). *See* 28 U.S.C. § 1915A (requir-
ing federal courts to pre-screen prisoner civil rights claims).**17**
It is also worth noting that, in light of the ever-rising percent-
age of federal inmates incarcerated in private prison facilities,
federal courts would be increasingly asked to make these
types of determinations.**18**

---

But there is no way to know on the record before us whether or not that
is the case. *Cf. Malesko*, 534 U.S. at 74 n.6 (noting that "[t]he record here
would provide no basis for [the government contractor] defense"). The
district court did not require GEO or its employees to file any response to
Pollard's suit before determining that his *Bivens* claim was precluded by
alternative state tort remedies. This is not unusual. Under 28 U.S.C.
§ 1915A, when a *Bivens* action is filed by a prisoner, the district court
must pre-screen any such complaints and dismiss those actions that fail to
state a claim upon which relief can be granted. Because the GEO employ-
ees were not required to respond to Pollard's complaint, we have no idea
whether they could pursue the government contractor defense were Pol-
lard's claims to be tried under state tort law. Nor do the GEO employees
have any incentive to make such an argument at this stage of the litigation,
as their argument rests on the existence of adequate alternative remedies
under state tort law which would be foreclosed by the successful invoca-
tion of such a defense. Thus, the GEO employees may have a complete
defense to liability under state tort law or they may not; we simply don't
know.

**17**Another, closely related, example of one of these potential defenses is
federal preemption. *See Saleh v. Titan Corp.*, 580 F.3d 1, 11-13 (D.C. Cir.
2009) (holding that plaintiff's state law tort actions against private military
contractors working for the federal government were preempted by federal
law).

**18**According to the United States Justice Department's statistics, as of
year-end 2000, 10.7% of all federal prisoners were held in privately oper-
ated prisons. Bureau of Justice Statistics, U.S. Dep't of Justice, Prisoners
in 2008 17, 38 (Dec. 2009), *available at* http://bjs.ojp.usdoj.gov/content/

**[17]**  In sum, a *Bivens* cause of action for prisoners' Eighth Amendment claims would be fairly straightforward to apply. By contrast, it would be difficult to administer a regime where *Bivens* claims were allowed to proceed only when state law would offer no remedy. While these observations are by no means dispositive of the question here presented, under *Wilkie* we are bound to consider them in deciding whether to allow a "new" cause of action to proceed, "the way common law judges have always done." 551 U.S. at 554.

### *(b)   Deterrence*

**[18]**  The Court has also looked to whether extending *Bivens* would undermine the "core purpose" of an implied cause of action: deterring individual officers from committing constitutional violations. *Malesko*, 534 U.S. at 74. Allowing a *Bivens* action to go forward here would not undermine that core purpose.

In *Meyer*, the Court declined to extend *Bivens* to permit suit against a federal agency, reasoning that plaintiffs could be expected to always choose to sue the federal agency over an individual who could assert qualified immunity as an affirmative defense. 510 U.S. at 485. To the extent that aggrieved parties would have "less incentive to bring a damages claim against individuals, 'the deterrent effects of the *Bivens* remedy would be lost.' " *Malesko*, 534 U.S. at 69 (quoting *Meyer*, 510 U.S. at 485). Thus, *Meyer* concluded that allowing a *Bivens* claim against federal agencies "would mean the evisceration of the *Bivens* remedy, rather than its extension." 510 U.S. at 485.

---

pub/pdf/p08.pdf (recording 145,416 total federal prisoners as of December 31, 2000, of which 15,524 were housed in privately operated prisons). As of year-end 2008, that percentage was 16.5%, thus showing an increase of almost 6% in those eight years alone. *Id.* (recording 201,280 total federal prisoners as of December 31, 2008, of which 33,162 were housed in privately operated prisons).

In *Malesko*, the Court echoed this reasoning in concluding that allowing *Bivens* suits to proceed against private prison corporations would undermine the deterrent effects of *Bivens*. 534 U.S. 70-71. According to the Court, "if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." *Id.* at 71 (citing the plurality opinion and Justice O'Connor's dissent in *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 464 (1993), for the proposition that corporations fare much worse before juries than do individuals). Thus, recognizing that corporations would likely bear the lion's share of responsibility for *Bivens* damages if subject to an implied cause of action under the Constitution, the Court concluded that the deterrence goals of *Bivens* would be undermined by such an extension. Whatever deterrent effect a suit against a corporation may have, the Supreme Court explicitly rejected the notion that corporate deterrence is relevant to the core deterrence goals of *Bivens*. *Id.* (stating that corporate deterrence "has no relevance to *Bivens*, which is concerned solely with deterring the unconstitutional acts of individual officers").

**[19]** The instant case does not present the same problems. It simply cannot be disputed that allowing *Bivens* suits against private prison employees would not undermine *Bivens*'s goal of deterring unconstitutional acts by individuals. The dissent argues that state tort remedies are "superior" to a *Bivens* remedy here, Dissenting Op. at 19721, and that allowing Pollard to bring a *Bivens* action would not serve *Bivens*' goal of deterrence, Dissenting Op. 19729. We disagree. It is true that state tort remedies may often serve to deter unconstitutional conduct, and that it may be easier to prevail on such a claim than on an Eighth Amendment *Bivens* claim. Indeed, in an action to recover damages for personal injuries under state tort theories such as negligence or medical malpractice, the plaintiff would not be required to prove deliberate indifference, as required to establish an Eighth Amendment violation. *See Estelle*, 429 U.S. at 104. But while we acknowledge that the

elements of a state tort claim may not be as demanding, we are not prepared to say that *Bivens* would have no marginal deterrent effect against individual employees of GEO.

For instance, in some states, a prisoner in Pollard's position must submit a declaration by a physician attesting that the suit is not frivolous. *See, e.g.*, Nev. Rev. Stat. § 41A.071 ("If an action for medical malpractice . . . is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice."). It is unclear how a prisoner like Pollard, who filed this claim *in forma pauperis*, would be able to secure such a declaration. The Eleventh Circuit in *Alba* concluded that a similar certification requirement in Georgia did not render the inmate's state remedies ineffective because it merely placed him in "the same shoes as anyone else in Georgia filing a professional malpractice claim," under "no stricter rules than the rest of Georgia's residents." 517 F.3d at 1255. But federal courts have long recognized that inmates proceeding *pro se* are not in the "same shoes" as other citizens. *See, e.g.*, *Houston v. Lack*, 487 U.S. 266, 275 (1988) (creating the more lenient "prison mailbox rule"—deeming a document filed by a *pro se* prisoner "filed" as of the time the prisoner delivers it to prison authorities for mailing (rather than the time it is received by the court)—because "whereas the general rule has been justified on the ground that a civil litigant who chooses to mail a notice of appeal assumes the risk of untimely delivery and filing, a *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk" (citation omitted)).

**[20]** Additionally, *Bivens* may allow for recovery of greater damages in some cases than a state tort law remedy. As discussed *infra*, were Pollard to bring a claim for medical malpractice under California law, there would be a cap on the

amount of non-economic damages he could recover. *See* Cal. Civ. Code § 3333.2. There is no similar cap on non-economic damages under *Bivens*. Thus, for a truly egregious case of neglect or abuse, a medical professional at a privately operated prison would face significantly greater liability under *Bivens* than state tort law. Furthermore, to be entitled to punitive damages under California law, a plaintiff must demonstrate "oppression, fraud, or malice." Cal. Civ. Code § 3294. By contrast, once a plaintiff has successfully met the "deliberate indifference" standard under the Eighth Amendment— requiring that the conduct be "wanton," *Wilson v. Seiter*, 501 U.S. 294, 302 (1991) there is little more that such a plaintiff would need to prove to establish a convincing argument for an award of punitive damages. These significant differences in the potential liability faced by privately operated federal prisons are prime examples of the "marginal deterrence" that *Bivens* offers. Thus, we do not find that this "special factor" counsels hesitation.

### (c)  *Asymmetrical Liability Costs*

The Court has also expressed concerns about imposing asymmetric liability costs on privately operated facilities as compared to government-operated facilities. *Malesko*, 534 U.S. at 72. We are equally concerned about issuing a decision that will yield disparate rights and remedies among inmates in private and public prisons. Unfortunately, under the current *Bivens* regime, asymmetries may remain irrespective of whether we recognize or deny a *Bivens* cause of action here.

[21] Unlike officers employed by public prisons, the GEO employees may not be entitled to qualified immunity, and as a result, prisoners asserting claims against them may be able to recover more often than their counterparts in governmentally run prisons. *Compare Richardson*, 521 U.S. at 401 (holding that employees of privately operated state prisons are not entitled to qualified immunity), *with Butz v. Economou*, 438 U.S. 478, 501 (1978) (holding that "federal officials

should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers" (emphases removed)), *and Holly*, 434 F.3d at 294 (stating that employees of privately operated federal prisons are not entitled to qualified immunity). We need not decide the issue of qualified immunity here.

**[22]** On the other hand, if we conclude that Pollard cannot bring a suit under *Bivens*, then *only* inmates in public prisons will be able to vindicate their constitutional rights. Prisoners would thereby have entirely different rules governing their rights depending upon whether they are incarcered in a public or private prison (and, for that matter, in which state the private prison is located). This outcome is equally undesirable. As asymmetries will persist irrespective of the outcome of this case, this consideration does not counsel hesitation in recognizing a *Bivens* remedy here.

## IV.   CONCLUSION

**[23]** We conclude that Pollard's suit under *Bivens* against the GEO employees for alleged violations of his Eighth Amendment rights should be allowed to proceed. We reach that conclusion because (1) the GEO employees act "under color of federal law" for purposes of *Bivens* liability; and (2) a faithful application of *Wilkie*'s two-part test counsels that state tort remedies alone are insufficient to displace *Bivens* and there are no "special factors counselling hesitation" in allowing Pollard's suit to proceed. We therefore reverse and remand to the district court for further proceedings consistent with this opinion. To the extent Pollard's appeal seeks to challenge the district court's dismissal of GEO from the lawsuit, we affirm the district court's disposition as to that issue.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**

RESTANI, Judge, concurring in part and dissenting in part:

I agree that the district court properly dismissed GEO from the lawsuit and that employees of a private corporation operating a federal prison are federal government actors. I conclude, however, that we would err by creating a split in the law of the various circuits by holding that a prisoner may maintain a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against such employees where adequate state law remedies exist. Until now, the federal circuits that have addressed the issue have held correctly that a prisoner may not maintain such an action. *See Alba v. Montford*, 517 F.3d 1249 (11th Cir.), *cert. denied*, 129 S. Ct. 632 (2008); *Holly v. Scott*, 434 F.3d 287 (4th Cir.), *cert. denied*, 547 U.S. 1168 (2006); *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090 (10th Cir. 2005), *vacated in relevant part and aff'd by equally divided en banc panel*, 449 F.3d 1097 (10th Cir. 2006) (per curiam), *cert. denied*, 549 U.S. 1056 (2006) and 549 U.S. 1063 (2006). The evolution of the U.S. Supreme Court's *Bivens* jurisprudence confirms that this Court should follow their lead.

I.   **The Supreme Court has limited *Bivens* to cases in which no alternative remedy is available against the federal actor who committed the wrong.**

The majority overlooks the reality that the Supreme Court has recognized *Bivens* causes of action only where federal officials, by virtue of their position, enjoy impunity, if not immunity, from damages liability because of gaps or exemptions in statutes or in the common law. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). In *Bivens*, the Supreme Court recognized an implied cause of action for damages under the Fourth Amendment against federal agents who illegally searched the plaintiff's home and arrested him. 403 U.S. at 389, 397. The Court acknowledged that a trespass tort action, which requires resistance that the plaintiff could not lawfully exert against federal agents, was unlikely to succeed

because the agents obtained permission to enter the home. *Id.* at 394-95.

The Supreme Court has only extended *Bivens* twice, "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Malesko*, 534 U.S. at 70. First, the Court recognized a *Bivens* action under the equal protection component of the Fifth Amendment Due Process Clause against a former Congressman who had fired one of his employees based on her sex, *Davis v. Passman*, 442 U.S. 228 (1979), because the employee "lacked any other remedy for the alleged constitutional deprivation," *Malesko*, 534 U.S. at 67. As the statute protecting federal employees from sex-based discrimination, 42 U.S.C. § 2000e-16(a), does not extend to such congressional employees, and the employee did not have any cause of action under state law, "there [were] available no other alternative forms of judicial relief." *Davis*, 442 U.S. at 245 & n.23, 247. *Davis*, like *Bivens*, involved "a plaintiff in search of a remedy." *Malesko*, 534 U.S. at 74; *see Davis*, 442 U.S. at 245 ("For Davis, as for Bivens, it is damages or nothing." (internal quotation marks and citation omitted)). In both cases, "the plaintiffs' injuries would have gone entirely unredressed without an implied constitutional remedy." *Holly*, 434 F.3d at 295.

Second, the Supreme Court held that a prisoner could bring a *Bivens* action under the Cruel and Unusual Punishments Clause of the Eighth Amendment against federal prison officials because the prisoner's only alternative remedy was a claim under the Federal Tort Claims Act ("FTCA") against the United States. *Carlson v. Green*, 446 U.S. 14 (1980). Although the FTCA applies only in instances where a private person would be liable under state law, 28 U.S.C. § 1346(b)(1), it precluded state tort actions against the individual federal officers, *Holly*, 434 F.3d at 296; *see* 28 U.S.C.

§ 2679(b)(1). Reasoning that actions against the United States under the FTCA would not sufficiently deter unconstitutional acts by individuals, the Court recognized a *Bivens* action "to provide an otherwise nonexistent cause of action against [the individuals]." *Malesko*, 534 U.S. at 70; *see also id.* at 74 (noting that the prisoner in *Carlson* sought "a cause of action against an individual officer, otherwise lacking").

Thus, the Supreme Court has recognized *Bivens* claims only "for want of other means of vindication," as "Davis had no other remedy, Bivens himself was not thought to have an effective one, and in *Carlson* the plaintiff had none against Government officials." *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007). As the majority notes, the Court has set forth two-step test to determine whether to recognize new *Bivens* actions:

> In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

*Id.* at 550 (citations omitted). Since *Carlson*, however, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68 (declining to recognize a *Bivens* action against a private corporation operating a federal prison).

## II.  The justifications for recognizing *Bivens* actions do not apply here.

### A.  Adequate alternative remedies are available to Pollard.

Here, ordinary state tort remedies for negligence or medical negligence against the GEO employees are an adequate, alternative, existing process for protecting Pollard's interest. Where, as here, the plaintiff has an alternative remedy against a federal official alleged to have acted unconstitutionally, the Supreme Court has "consistently rejected invitations to extend *Bivens*." *Malesko*, 534 U.S. at 70. Unlike *Bivens*, in which alternative state tort remedies were inadequate because the plaintiff's lack of resistance to the federal agents foreclosed a trespass action, Pollard's "claim of negligence or deliberate indifference requires no resistance to official action." *Id.* at 74. Additionally, employees of private prison corporations do not enjoy impunity or immunity as to damages because of gaps or exemptions in statutes or in the common law.

In fact, as the majority concedes, tort remedies for negligence and medical negligence may be even more easily obtained than remedies under *Bivens* for an Eighth Amendment violation "because the heightened 'deliberate indifference' standard of Eighth Amendment liability would make it considerably more difficult for [a plaintiff] to prevail than on a theory of ordinary negligence."[1] *Malesko*, 534 U.S. at 73 (citations omitted). Thus, Pollard does not lack effective remedies because his "alternative remedies are at least as great, and in many respects greater, than anything that could be had under *Bivens*." *Id.* at 72. The state tort remedies for negli-

---

[1] Pollard could also sue GEO under a respondeat superior theory in tort, even though he cannot pursue a *Bivens* action against GEO under *Malesko*. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358, 360 (Cal. 1995); *Chesterman v. Barmon*, 753 P.2d 404, 406 (Or. 1988) (en banc); *see also Alba*, 517 F.3d at 1256 n.7; *Holly*, 434 F.3d at 296.

gence or medical negligence are therefore a more than adequate alternative, existing process for protecting Pollard's interest. *See id.* at 72-74 (declining to recognize a *Bivens* action under the Eighth Amendment where the plaintiff had alternative remedies under state tort law for negligence and remedial mechanisms established by the Bureau of Prisons ("BOP")).[2]

### B. The availability of tort remedies is a convincing reason to refrain from recognizing a new damages remedy.

The availability of a superior alternative remedy is a convincing reason for the Judicial Branch to refrain from providing a new, freestanding damages remedy. *See Holly*, 434 F.3d at 295. Courts are reluctant to recognize new *Bivens* actions, which are implied without any Congressional authority, because " 'a decision to create a private right of action is one better left to legislative judgment in the great majority of cases.' " *Id.* at 289 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004)); *see also Malesko*, 534 U.S. at 67 n.3 ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one."). Rather, "[s]o long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[ ] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. "The dangers of overreaching in the creation of judicial remedies are particularly acute where such remedies are unnecessary." *Holly*, 434 F.3d at 295. Because

---

[2]The majority notes that the alternative BOP administrative remedies that were available in *Malesko* do not appear to be available to Pollard. Maj. Op. at 19701-02 n.12. *Malesko*, however, only briefly mentioned BOP remedies and actually emphasized the availability of state tort remedies. *See* 534 U.S. at 72-74. Additionally, BOP remedies are not as relevant as tort remedies to the *Bivens* analysis because the BOP's administrative grievance remedies do not include damages. *See id.* at 74.

a *Bivens* action is unnecessary against the employees of a private prison corporation, we should not recognize such an action.**³**

## III.   The availability of a state tort remedy may preclude a *Bivens* action.

The majority's conclusion that the availability of state remedies is not a convincing reason for the judiciary to refrain from recognizing a *Bivens* remedy is based on the faulty premises that remedies that preclude *Bivens* must (1) be crafted by Congress and (2) "appl[y] uniformly throughout the republic." *Castaneda v. United States*, 546 F.3d 682, 701 (9th Cir. 2008), *rev'd on other grounds sub nom. Hui v. Castaneda*, __ S. Ct. __, 2010 WL 1740524 (May 3, 2010). The first is wrong because the Supreme Court actually has considered remedies not crafted by Congress, and *Malesko* itself is one instance in which the Court declined to recognize a *Bivens* action because of state remedies. The second is wrong because the need for uniformity is not particularly compelling where the persons who harmed the plaintiff are private employees of a private entity.

### A.   The Supreme Court has declined to recognize a *Bivens* action because of state remedies.

Recent Supreme Court precedent makes clear that a state tort remedy may be an alternative, existing process that precludes recognition of a *Bivens* action. In *Malesko*, the Court "consider[ed] availability of state tort remedies in refusing to recognize a *Bivens* remedy." *Wilkie*, 551 U.S. at 551. The Court also has "rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for

---

**³**Although we have stated previously that "to the extent that [a plaintiff] sought recovery from individual employees of [a private corporation managing a federal prison], the case had to [be] brought as a *Bivens* action," that statement was pure dicta. *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004).

challenging a constitutional deprivation in federal court." *Malesko*, 534 U.S. at 69. Thus, an alternative remedy need not be a federal remedy. *See id.*; *Alba*, 517 F.3d at 1254.

There is some tension between *Malesko* and other recent Supreme Court cases, and *Carlson*, which suggested that the only kind of alternative remedy that could defeat a *Bivens* claim was one provided by Congress "which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18-19; *see also Peoples*, 422 F.3d at 1097, 1102 (noting that recent cases suggest that *Bivens* is presumptively unavailable, whereas *Carlson* suggested that a *Bivens* claim is presumptively available). The tension, however, can be resolved by understanding the *Carlson* formulation as a "test for express *Bivens* preemption" by a statute. *Castaneda*, 546 F.3d at 689, *rev'd on other grounds*, __ S. Ct. __, 2010 WL 1740524. *Malesko*, which did not involve any statute, did not discuss this test. The Supreme Court has determined that alternative remedies that are not expressly authorized by Congress and are not an equally effective substitute nonetheless may preclude a *Bivens* remedy. *See Bush v. Lucas*, 462 U.S. 367 (1983). More recently, in a case in which express statutory preemption was not at issue, the Supreme Court has stated that it will not recognize a new *Bivens* action if "*any* alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain." *Wilkie*, 551 U.S. at 550 (emphasis added). Finally, even if *Carlson* and *Malesko* are truly irreconcilable, we should follow the most recent Supreme Court precedent, *Malesko*. *Holly*, 434 F.3d at 303 (Motz, J., concurring in the judgment); *Peoples*, 422 F.3d at 1102.

The majority's statement that in *Wilkie*, the existence of an alternative state remedy alone was not sufficient to preclude a *Bivens* action, Maj. Op. at 19704, is misleading. Rather, in *Wilkie*, the Supreme Court considered that the plaintiff had "an administrative, and ultimately a judicial, process for vin-

dicating virtually all of his complaints" for torts, improper criminal charges, unfavorable agency actions, and other offensive behavior by the Bureau of Land Management. 551 U.S. at 551, 553. The Court, however, found that the plaintiff functionally did not have a remedy for his true complaint regarding the agency's course of dealing as a whole because "the forums of defense and redress open to [the plaintiff] are a patchwork, an assemblage of state and federal, administrative and judicial benches applying regulations, statutes and common law rules." *Id.* at 554-55. It is too much of a stretch to infer, as the majority does, that if the plaintiff had merely complained of one or more torts, the Court would have reached the same result. To the contrary, the Court noted that "when the incidents are examined one by one, [the plaintiff's] situation does not call for creating a constitutional cause of action for want of other means of vindication." *Id.* at 555. Further, the *Wilkie* Court concluded that, even where the remedies available are a patchwork, the need for a *Bivens* remedy is not particularly compelling, as "[i]t would be hard to infer that Congress expected the Judiciary to stay its *Bivens* hand, but equally hard to extract any clear lesson that *Bivens* ought to spawn a new claim." *Id.* at 554.

## B. The need for uniformity is not compelling here.

Uniformity of liability is sometimes important to a *Bivens* analysis. In *Carlson*, the Supreme Court stated that "the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules" and that "[t]he question whether [an] action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution."[4]

---

[4]Following *Carlson*, this Circuit in *Castaneda* stated that the FTCA is an inadequate alternative to *Bivens* because "[w]e do not believe that Congress intended to delegate to the states the mechanism by which violations of federally established rights are remedied," and that "[w]e are aware of no case holding a remedial scheme that is entirely parasitic on state law to be a substitute for a *Bivens* remedy." 546 F.3d at 701, *rev'd on other grounds*, __ S. Ct. __, 2010 WL 1740524.

*Carlson*, 446 U.S. at 23. Specifically, the Court concluded that a uniform federal rule of survivorship for Eighth Amendment *Bivens* claims was necessary where one state's law would permit survival of the claims but another would not. *Id.* at 23-24. Essentially, state law previously had dictated whether the prisoner's claim died with him.

Here, however, the need for uniformity of rules is much less compelling. First, although employees of a private corporation operating a federal prison may be government actors, they are not federal officials and do not have the same immunities as federal officials. Second, ordinary negligence and medical negligence causes of action are already universally available against employees of a private corporation operating a federal prison, and the elements of such common law-derived causes of action are fundamentally the same in every state.

Unlike in *Carlson*, no individual state law forecloses or extinguishes such actions altogether, although many states have enacted various procedural hurdles and limits on non-economic damages in medical malpractice suits. *Castaneda*, 546 F.3d at 690-91, *rev'd on other grounds*, __ S. Ct. __, 2010 WL 1740524. The majority points to the differences between the California and Oregon statutes of limitations and the fact that Pollard's medical malpractice claim would be subject to a non-economic damages cap under California law but not under Oregon law. Maj. Op. at 19706-07. These differences, however, should not be determinative, as an alternative remedy need not provide complete relief for the plaintiff. *See Bush*, 462 U.S. at 388. Rather, as the Eleventh Circuit has held, "[t]hat state procedural rules complicate the filing of a lawsuit does not mean that a plaintiff lacks *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct," and procedural hurdles in filing a state action do not "render state relief unavailable in the same vein in which the Supreme Court held it to be unavailable in *Bivens*." *Alba*, 517 F.3d at 1255 (internal quotation marks and

citation omitted); *see also Peoples*, 422 F.3d at 1104-05 (stating that Supreme Court precedents do not mandate recognition of a *Bivens* action "simply because an alternative state law claim may be subject to a punitive damages cap to which a federal claim is not").

## IV.   Special factors also counsel hesitation in recognizing a new *Bivens* action.

The availability of an adequate alternative remedy should end the analysis. The court need not look at other special factors, such as whether extending the cause of action would: (1) be feasible, (2) serve *Bivens*'s deterrence goals, or (3) impose asymmetric liability costs. In any event, these factors do counsel hesitation here and certainly do not counsel in favor of recognizing a new *Bivens* action, as the majority suggests.

### A.   Case-by-case *Bivens* determinations are feasible.

First, although a *Bivens* action under the Eighth Amendment for prisoners is a workable cause of action that is recognized already, allowing a *Bivens* action to go forward only where a plaintiff would otherwise have no alternative remedy is not unduly complicated. Rather, the Supreme Court appears to prefer case-by-case determinations of whether adequate alternative remedies exist to a blanket determination that *Bivens* is available to an entire class of plaintiffs. *See Wilkie*, 551 U.S. at 550, 554 (stating that the first step of the *Bivens* analysis involves determining "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" and that the next step involves "weighing reasons for and against the creation of a new cause of action, the way common law judges have always done"). Thus, the Supreme Court has invited federal courts to determine whether an alleged Eighth Amendment violation has a state law analogue and apply *Bivens* only if there is no such state analogue.

Further, the current system of determining whether a state analogue exists is easy to administer because there is unlikely to be an instance in which an Eighth Amendment violation by a private prison employee is not a tort. An Eighth Amendment violation requires a " 'sufficiently serious' " condition and " 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Tort law similarly imposes a duty of care on jailers or prison employees to protect the life and health of prisoners in their custody and protect the prisoners from foreseeable harm or unreasonable risk of physical harm. *See, e.g.*, *Giraldo v. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 371, 382-87 (Cal. Ct. App. 2008); Restatement (Second) of Torts § 314A(1)(a), (4), illus. 6 (1965). Breach of this duty may give rise to a negligence claim. *See Giraldo*, 85 Cal. Rptr. 3d at 390.

The majority does not contend that the acts alleged here fall into the category of acts that violate the Eighth Amendment but are not covered by state tort law, and that is not the case. California, Oregon, and every other state recognize the torts of negligence and medical negligence. The tort of negligence also covers Pollard's allegation that the prison employees deprived him of food while his arms were in casts, as numerous cases recognize that the keeper of a jail has a common law duty to provide prisoners with food. *See, e.g.*, *Farmer v. State ex rel. Russell*, 79 So. 2d 528 (Miss. 1955); *Richardson v. Capwell*, 176 P. 205, 208 (Utah 1918); *Dabney v. Taliaferro*, 25 Va. (4 Rand.) 256 (1826).

There is no reason to think that either federal preemption or the government contractor defense, which the majority mentions, is applicable here. No federal law expressly or impliedly preempts or directly conflicts with a state tort of negligence or medical malpractice here, and federal law does not occupy the field governing private corrections employees' actions. The government contractor defense is not likely to apply because there is no indication that the United States directed the GEO employees' treatment of Pollard. *See*

*Malesko*, 534 U.S. at 74 n.6 (noting that "[t]he record here would provide no basis for such a defense," which is available when "the government has directed a contractor to do the very thing that is the subject of the claim").[5]

Because the conduct at issue here certainly is covered by state tort law, the other examples the majority posits that may violate the Eighth Amendment of the Constitution but may not be covered by tort law are inapposite. In any event, I am not convinced that any of these acts—denying a prisoner access to a toilet and thus exposing the prisoner to human waste for thirty-six hours, depriving a prisoner of basic necessities, completely depriving a prisoner of outdoor exercise for a period of years, and exposing a prisoner to other unhygienic conditions—would not be covered by tort law. Rather, each act involves a clear breach of the duty of reasonable care and would unreasonably jeopardize a prisoner's health. *See Irabor v. Perry County Corr. Ctr.*, No. 06-0483-BH-C, 2008 WL 1929965, at *2-3 (S.D. Ala. Apr. 30, 2008) (holding that a plaintiff had adequate state tort remedies available to redress the denial of "basic necessities such as socks, toilet paper, and soap"); *Miller v. Owsley*, 422 S.W.2d 39, 43 (Mo. 1967) (recognizing that a police officer fails to act with due care if the officer confines a prisoner in an unfit and unsanitary place); *Richardson*, 176 P. at 208 (stating that the keeper of a jail has a common law duty to keep the jail warm and sanitary); *Dabney*, 25 Va. (4 Rand.) 256 (holding that under common law, a jailor has a duty to provide a prisoner with necessary supplies, such as fuel for heat and bed covering); *see generally* M. L. Schellenger, Annotation, *Civil Liability of Sheriff or Other Officer Charged with Keeping Jail or Prison for Death or Injury of Prisoner*, 14 A.L.R.2d 353, § 9.

---

[5]Because there is no reason to think that these defenses apply, I do not share the majority's concern about the district court's dismissal of the case pursuant to 28 U.S.C. § 1915A before the defendants made any filing.

## B. Recognizing a *Bivens* action here would not deter individual officers.

Second, as the majority recognizes, state tort liability deters private prison officials from wrongdoing and may even provide more relief for Pollard than the Eighth Amendment would because the deliberate indifference standard for Eighth Amendment claims creates a high bar to hurdle. Maj. Op. at 19713. This undermines the deterrence analysis. Because "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," *Malesko*, 534 U.S. at 70, the purpose of *Bivens* is not served where, as here, state law already allows for compensatory and punitive damages for the same conduct, *Peoples*, 422 F.3d at 1105. In such an instance, a *Bivens* action is unnecessary. *See id.* Further, it is difficult to see how potential procedural differences in state laws or between the state and federal law would figure into deterrence as a practical matter. As discussed *supra*, the court should hesitate to create an unnecessary judicial remedy. *See Holly*, 434 F.3d at 295.

## C. Declining to recognize a *Bivens* action here would avoid concerns about asymmetrical liability costs.

Finally, declining to recognize a *Bivens* action here would avoid the concerns that the Supreme Court has expressed about imposing asymmetrical liability costs. *See Malesko*, 534 U.S. at 72. Although declining to recognize a *Bivens* action would perpetuate an existing public-private asymmetry because *Bivens* actions are permitted against federal prison employees but not private prison employees, declining to create a *Bivens* action would not "*impose* costs on one wrong-doer and not another." *Peoples*, 422 F.3d at 1103 (emphasis added). By contrast, recognizing that a plaintiff may pursue both a *Bivens* action and a tort action against private prison employees may impose asymmetrical liability costs, as a plaintiff currently may assert tort claims against private prison employees, while *Bivens* actions allow for recovery from fed-

eral employees where the FTCA otherwise bars tort claims against them. *See Malesko*, 534 U.S. at 72-73 (noting that "federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in government facilities"); *see also Peoples*, 422 F.3d at 1103. Indeed, as the majority notes, plaintiffs may be able to recover from private prison employees more often than from federal prison employees because private prison employees may not be entitled to qualified immunity. *See Richardson v. McKnight*, 521 U.S. 399, 401 (1997).

## V.   Conclusion

I would join with other circuits in concluding that a *Bivens* cause of action is not available against employees of privately-run prison corporations where, as here, state tort laws provide a remedy. Accordingly, I respectfully dissent in part.